ANNA BOCCANFUSO ET AL. *v.* JOHN M.
GREEN ET AL.

ANNA BOCCANFUSO ET AL. *v.* HAROLD A.
GORHAM ET AL.
(AC 25109)

Schaller, Harper and Hennessy, Js.

Argued March 21—officially released September 13, 2005

*John R. Hall*, with whom was *Edward Kanowitz*, for the appellants (defendant Louis Allen Conner, Jr., et al.).

*William Bradley Kellogg*, for the appellees (plaintiffs).

*Opinion*

HARPER, J. The defendants[1] appeal from the judgment of the trial court rendered in favor of the plaintiffs[2] in these consolidated actions[3] in which the plaintiffs claimed that they own by adverse possession two contiguous parcels of land. On appeal, the defendants claim that the court acted improperly in determining that (1) the plaintiffs had established adverse possession over the parcels and (2) the defendants failed to prove that they had acquired title to the parcels by adverse possession. We affirm the judgment of the trial court.

The court found the following facts that are relevant to our resolution of the defendants' appeal. The plaintiffs commenced two actions alleging that they had acquired, by adverse possession, ownership of two parcels of land in Westport, referred to at trial as parcel B1[4] and parcel

---

[1] In these consolidated actions, the defendants Louis Allen Conner, Jr., and Eulala M. Conner, and John Monroe Green, Lewis C. Green and Barbara Helen Bunting, named individually and as trustees under the last will and testament of Isabelle Green and Harold Green appeared and participated in the trial. The defendants Harold Gorham or his widow, heirs or representatives and creditors, and Philip P. Mahoney or his widow, heirs or representatives and creditors did not appear at trial and were defaulted. We refer in this opinion to the appellants, Louis Allen Conner, Jr., and Eulala M. Conner, as the defendants.

[2] The plaintiffs in both actions are Anna Boccanfuso and her sons, Domenico Boccanfuso and Crescienzo Boccanfuso.

[3] The plaintiffs initiated the proceedings by filing two separate lawsuits claiming adverse possession or prescriptive rights over two parcels of land in Westport. The matter entitled *Boccanfuso* v. *Gorham*, judicial district of Fairfield, Docket No. 379584, involved claims concerning parcel B1. The matter entitled *Boccanfuso* v. *Green*, judicial district of Fairfield, Docket No. 379583, involved claims concerning parcel B2.

[4] Parcel B1 is also known as lot 119-H1 on the town of Westport tax assessor's map number 5262-1. The legal description of parcel B1 is "[a]ll that certain piece or parcel of land together with the improvements thereon situated on the northerly side of Harbor Road in the Town of Westport, County of Fairfield and State of Connecticut and described as follows:

"Beginning at a point on the northerly highway line of Harbor Road, which point is the extension northerly of the westerly highway line of Madeline

## B2.[5] Both parcels are bounded on the north by the

Avenue, said point being 30.7 feet from the northwesterly corner of Madeline Avenue; thence N 13 57' 38" E by a projection northerly of the westerly highway line of Madeline Avenue, a distance of 37 feet, more or less, to a point at the mean high mark of the Saugatuck River or Harbor, thence easterly along the mean high water mark of the Saugatuck River or Harbor, a distance of 28.5 feet, more or less, to a point at the intersection of the mean high water mark of Saugatuck River or Harbor and the extension northerly of the easterly highway line of Madeline Avenue to said mean high water mark; thence S 13 57' 30" W, a distance of 38 feet, more or less to a point on the northerly side of Harbor Road; thence N 46 45' 50" along the northerly highway line of Harbor Road, a distance of 28.66 feet, to a point marking the point or place of beginning.

"The [p]remises constitute the westerly side of property shown as Parcel B Area = 1690 +/- sq. ft. on a [m]ap entitled 'Survey Prepared for Robert E. Donahue, Elizabeth T. Donahue and Anna LaMance, Westport, Connecticut,' Scale 1" = 10,' Dated July 22, 1974, certified substantially correct by Leo Leonard, Surveyor, which [m]ap was filed on October 17, 1974 in the Westport Town Clerk's Office as Map Number 7220. The southwesterly corner of Parcel B.

"The premises are also shown as Parcel B1 on a [m]ap entitled 'Map of Property Prepared for Anna Boccanfuso, Harbor Road, Westport, Connecticut,' Scale 1" = 20', Dated September 5, 2000, certified substantially correct by Charles Leonard, Surveyor."

[5] Parcel B2 is also known as lot 119-H on the town of Westport tax assessor's map number 5262-1. The legal description of parcel B2 is "[a]ll that certain piece or parcel of land together with the improvements thereon situated on the northerly side of Harbor Road in the Town of Westport, County of Fairfield and State of Connecticut and described as follows:

"Beginning at a point on the northerly highway line of Harbor Road, which point is the extension northerly of the easterly boundary line of property shown as 'Land of Robert E. and Elizabeth T. Donahue" on a Map entitled 'Survey Prepared for Robert E. Donahue, Elizabeth T. Donahue and Anna La Mance, Westport, Connecticut,' Scale 1" = 10', Dated July 22, 1974, certified substantially correct by Leo Leonard, Surveyor, which map was filed on October 17, 1974 in the Westport Town Clerk's Office as Map Number 7220, said point being 29.84 feet from the northeasterly corner of said property of Robert E. Donahue and Elizabeth T. Donahue; thence N 50 04' 00" W along the northerly highway line of Harbor Road, a distance of 13.39 feet; hence N 46 45' 50" W continuing along the northerly highway line of Harbor Road a distance of 14.86 feet to a point at the intersection of the northerly boundary of Harbor Road and the extension northerly of the easterly highway line of Madeline Avenue, said point being 32.09 feet from the northwesterly corner of said property of Robert E. Donahue and Elizabeth T. Donahue shown on Map 7220; thence N 13 57' 30" E a distance of 38 feet, more or less, to a point at the intersection of the mean high water mark of the

Saugatuck River and on the south by Harbor Road. Parcel B2 is bounded on the west by parcel B1. Parcel B1 is bounded on the west by beachfront property known as lot 120-H, which is owned by the plaintiffs. Parcel B2 is bounded on the east by land identified as lot A. The parcel identified as lot A and the land to the east of lot A are owned by the plaintiffs. The plaintiffs are the record owners of the beachfront property in the area along that stretch of Harbor Road, except parcel B1 and parcel B2.

Parcels B1 and B2 are located across Harbor Road from the property known as 5 Madeline Avenue, which is owned by the defendants. The defendants purchased the 5 Madeline Avenue property through a warranty deed on May 12, 1978. The deed included parcel B1 and parcel B2 as a part of the property transfer, but the evidence presented to the court established that Robert Donahue and Elizabeth Donahue, who purportedly conveyed parcels B1 and B2 to the defendants, did not have title ownership of the parcels. The defendants later acquired title ownership of parcel B2 by a quitclaim deed dated May 21, 1999. The court found that ownership of parcel B1 remained in the names of Harold A. Gorham and Philip P. Mahoney, who were named as defendants but did not appear in this action.[6]

---

Saugatuck River or Harbor and the extension northerly of the westerly boundary of said property of Robert E. Donahue and Elizabeth T. Donahue, to said mean high water mark; thence easterly along the mean high water mark of the Saugatuck River or Harbor, a distance of 29.5 feet, more or less, to a point; thence 13 57' 30" W a distance of 36 feet, more or less, to the point marking the point or place of beginning.

"The premises constitute the easterly side of property shown on Parcel B Area - 1690 +/- sq. ft. on Map Number 7220 referred to above. The southeasterly corner of Parcel B.

"The [p]remises are also shown as Parcel B2 on a [m]ap entitled 'Map of Property Prepared For Anna Boccanfuso, Harbor Road, Westport, Connecticut,' Scale 1" = 30', Dated September 5, 2000, certified substantially correct by Charles L. Leonard, Surveyor."

[6] The court, therefore, entered a default for failure to appear against Gorham and Mahoney, and their widows, heirs, representatives and creditors.

The plaintiff Anna Boccanfuso and her husband, Joseph Boccanfuso, purchased from Mahoney the property known as 88 Harbor Road and the beach area directly across the street from that property in April, 1950. Joseph Boccanfuso died in October, 1967. In a deed recorded in February, 1979, Anna Boccanfuso conveyed the property to herself and to her three sons, Giuseppe Boccanfuso and the plaintiffs Domenico Boccanfuso and Crescienzo Boccanfuso. In May, 1994, Giuseppe Boccanfuso transferred his interest back to his mother; therefore, the plaintiffs are the current owners of 88 Harbor Road. Anna Boccanfuso and Domenico Boccanfuso currently reside at 88 Harbor Road.

Immediately to the west of 88 Harbor Road is property known as 84 Harbor Road. In July, 1982, the three Boccanfuso sons acquired 84 Harbor Road and the beach area directly across the street from the property, known as lot 118-H, from Joseph O'Connor and Mollie O'Connor. The property located at 84 Harbor Road and the beach property directly across from it are now owned by Anna Boccanfuso and her three sons.

The defendants' property, located at 5 Madeline Avenue, is immediately to the west of 84 Harbor Road. The disputed beachfront parcels lie directly across Harbor Road from the defendants' property. The Donahues conveyed the property known as 5 Madeline Avenue to the defendants through a warranty deed in 1978.[7] The 1978 deed, and the prior deed that conveyed title from Elaine Rosenburg to the Donahues in 1972, purported to convey title to parcels B1 and B2.[8] In contrast, the deed

---

[7] The Donahues' deposition testimony indicated that they used parcels B1 and B2 without any contact or communication with the plaintiffs or their family members. The Donahues owned 5 Madeline Avenue from 1971 to 1978, during which they resided at the property only in the summer months. The Donahues did not observe the plaintiffs' family actively or regularly using parcels B1 and B2.

[8] Robert Donahue did not believe that he owned parcels B1 or B2 despite the description of those parcels in his deed of 5 Madeline Avenue.

that conveyed title from Nancy Littlefield to Rosenburg in 1967 did not include parcels B1 and B2 as part of the conveyance. Virginia Ehrhorn owned 5 Madeline Avenue between 1948 and 1961;[9] she then conveyed the property to Littlefield. Ehrhorn did not believe that she had owned parcels B1 or B2. Because of that discrepancy in title, the defendants abandoned their claim, in which they alleged that they had title ownership of parcels B1 and B2 on the basis of the 1978 deed through which they acquired 5 Madeline Avenue.

Directly across Madeline Avenue to the west of 5 Madeline Avenue is the property known as 80 Harbor Road. Anna Boccanfuso and her husband purchased from George Tilly and Winifred Tilly the property known as 80 Harbor Road along with the beach property located directly across Harbor Road from the property, referred to as lot 120-H. The plaintiffs presently own that property.[10]

Although Anna Boccanfuso believed that when she and her husband purchased 88 Harbor Road in 1950, the purchase included parcels B1 and B2, her belief was incorrect because the property description contained in the deed clearly did not include parcels B1 and B2. The plaintiffs, however, used and maintained parcels B1 and B2 as though they owned them. Parcels B1 and B2 were the primary means of gaining access to the adjacent beach parcels; thus, the plaintiffs regularly used parcels B1 and B2 to access the beach for recreation and maintenance of parcels B1 and B2 and the parcels of beach surrounding the disputed parcels.

[9] During the time that Ehrhorn owned that property, she lived on the property only for three summers. She did not observe or regularly use the beach area.

[10] In a deed recorded in 1981, Anna Boccanfuso conveyed the property to herself and to her three sons. In 1994, Giuseppe Boccanfuso transferred his interest to Anna Boccanfuso.

The plaintiffs began using those parcels in the 1950s and continued to use them in varying degrees until the time of trial. In addition to using the disputed parcels for recreational purposes, the plaintiffs' family operated a rowboat rental business beginning in the 1950s and continuing for about a decade. In connection with that business, they stored rowboats along the beach, including on parcels B1 and B2, and launched the rowboats from those parcels.

The plaintiffs hired contractors to bring boulders onto the beach area. The boulders were brought onto parcels B1 and B2 and then spread and set in a solid line along the entire length of the beach to serve as a protective seawall, with the exception of a portion of parcels B1 and B2 that served as an access and egress to the beach area and the Saugatuck River. Beginning in the 1950s, the plaintiffs and their family put sand, gravel and boulders on parcels B1 and B2 and then spread those materials along the beach with a backhoe, wheelbarrows, shovels and rakes to maintain the beach after storms and to prevent erosion. The court found that there was "no evidence that any one else hauled and dumped materials on and maintained the beach to the degree or extent as performed by the plaintiffs and their family."

To facilitate vehicle access to the beach area, the plaintiffs' family built a boat ramp made of dirt on parcels B1, B2 or both. The plaintiffs built the first boat ramp in the 1950s. The integrity and existence of the ramp varied through the years due to erosion and weather conditions and, thus, the plaintiffs' family reconstructed the ramp periodically through the years. The plaintiffs used the ramp as access and egress for boats, dump trucks, backhoes and wheelbarrows. There is no evidence that anyone else built or maintained ramps on parcels B1 or B2.

The plaintiffs' use of the ramp continued until the 1990s. In 1967, the plaintiffs used the ramp to allow equipment to access and egress the beach area while constructing seawalls on the plaintiffs' property in front of 88 Harbor Road. The plaintiffs used the ramp for similar purposes in 1986, while constructing seawalls on the parcels opposite 80 and 84 Harbor Road. The seawall built by the plaintiffs encroached onto parcel B1. The plaintiffs also built a wall perpendicular to Harbor Road that divided parcel B1.

Parcels B1 and B2 were not included on Westport's tax rolls until October 1, 1987, at which time both parcels were added. Since October 1, 1987, the plaintiffs have paid the property taxes on parcels B1 and B2.

These consolidated actions were tried to the court in a four day period between July 17 and 23, 2003. The defendants filed numerous special defenses and counterclaims. The defendants first alleged that the plaintiffs failed to prove that they acquired title to parcels B1 and B2 by adverse possession prior to the defendants' purchase of 5 Madeline Avenue in 1978; however, the defendants alleged that if the court found that the plaintiffs had acquired title to those parcels by adverse possession that the defendants extinguished the plaintiffs' title to parcels B1 and B2 by their adverse possession of those parcels. The defendants argued alternatively that they acquired a prescriptive easement over parcels B1 and B2. The plaintiffs denied the allegations in the defendants' counterclaims and filed numerous special defenses.

The court found, on January 22, 2004, that the plaintiffs acquired ownership of parcels B1 and B2 by adverse possession by 1970, before the defendants had purchased the 5 Madeline Avenue property, and that the defendants had failed to establish that they had acquired title to parcels B1 and B2 by adverse posses-

sion. The court, however, found that the defendants had a prescriptive easement over a portion of parcel B1 and all of parcel B2 for recreational purposes and to access the Saugatuck River. On appeal, the defendants claim that the court improperly determined that (1) the plaintiffs' use of the property satisfied the elements of adverse possession and (2) the defendants did not establish adverse possession.

After the court issued its memorandum of decision, the plaintiffs filed a motion for articulation asking the court to specify the point in time beyond 1970 up to which they continued to satisfy the requirements of adverse possession. The court granted articulation with a handwritten notation.[11] The plaintiffs filed in this court a motion for review, claiming that the articulation was inadequate. This court granted the motion for review and, in response, the trial court issued an articulation stating that "the plaintiffs continued to satisfy the elements of adverse possession beyond the 1970s and to the time of trial." This appeal followed.

As a preliminary matter, we set forth our well established standard of review. "A finding of adverse possession is to be made out by clear and positive proof. . . . [C]lear and convincing proof . . . denotes a degree of belief that lies between the belief that is required to find the truth or existence of the [fact in issue] in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution. . . . [The burden] is sustained if evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or

---

[11] The notation indicated that the motion for articulation was granted to the following limited extent: "The adverse use of the disputed property began upon or soon after Anna Boccanfuso's purchase of 88 Harbor Road in 1950 so that the fifteen year period of adverse possession was satisfied at least by 1970 before the [defendants] or their predecessors in title, the Donahues, acquired title to 5 Madeline Avenue."

exist is substantially greater than the probability that they are false or do not exist. . . . The burden of proof is on the party claiming adverse possession. . . .

"Despite that exacting standard, our scope of review is limited. Adverse possession is a question of fact, and when found by the trial court will not be reviewed by this court as a conclusion from evidential facts, unless it appears that these facts, or some of them, are legally or logically necessarily inconsistent with that conclusion." (Internal quotation marks omitted.) *Allen* v. *Johnson*, 79 Conn. App. 740, 745, 831 A.2d 282, cert. denied, 266 Conn. 929, 837 A.2d 802 (2003).

The defendants' claim requires us to review the court's factual findings. "The standard of review with respect to a court's findings of fact is the clearly erroneous standard. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed . . . ." (Internal quotation marks omitted.) Id., 745–46.

## I

### A

We first review the defendants' claim that the court, on the basis of the evidence presented, improperly found that the plaintiffs obtained title to parcels B1 and B2 prior to 1978. We are not persuaded that the court's finding was clearly erroneous.

"[T]o establish title by adverse possession, the claimant must oust an owner of possession and keep such

owner out without interruption for fifteen years by an open, visible and exclusive possession under a claim of right with the intent to use the property as his own and without the consent of the owner." (Internal quotation marks omitted.) *1525 Highland Associates, LLC* v. *Fohl,* 62 Conn. App. 612, 622, 772 A.2d 1128, cert. denied, 256 Conn. 919, 774 A.2d 137 (2001); see also General Statutes § 52-575 (a). The court determined that the plaintiffs' adverse use of the property ousted any prior owner and that the plaintiffs met all the other elements of adverse possession. After reviewing the record, we conclude that the court's findings were legally and logically consistent with the evidence presented and not clearly erroneous.

The defendants argue that the plaintiffs' assertion of title by adverse possession must fail because the evidence presented to the court demonstrated that the plaintiffs' use of parcels B1 and B2 was not exclusive. The court relied on the principles outlined by our Supreme Court in *Roche* v. *Fairfield,* 186 Conn. 490, 502, 442 A.2d 911 (1982), to determine that the plaintiffs had fulfilled the requirement of exclusive possession of the disputed parcels. "In general, exclusive possession can be established by acts, which at the time, considering the state of the land, comport with ownership; viz., such acts as would ordinarily be exercised by an owner in appropriating land to his own use and the exclusion of others. . . . Thus, the claimant's possession need not be absolutely exclusive; it need only be a type of possession which would characterize an owner's use. . . . It is sufficient if the acts of ownership are of such a character as to openly and publicly indicate an assumed control or use such as is consistent with the character of the premises in question." (Citations omitted; internal quotation marks omitted.) Id., 502–503.

The defendants claim, however, that *Roche* is distinguishable from the present case because *Roche* concerned a municipality that adversely had possessed a beach, which it then operated as a public beach. The defendants claim that the nature of a public beach prevents the exclusion of anyone, thereby necessitating the court to restrict the definition of exclusive possession. We decline the defendants' invitation to limit the principles that constitute exclusive possession that our Supreme Court established in *Roche*.

During the trial, the parties presented detailed evidence relating to their use of parcels B1 and B2. The court found that "[b]ecause parcels B1 and B2 provided the most convenient ways to reach this entire beach area, over the years other people used these parcels to gain access to the beach. However, from 1950 through at least 1978, there is no persuasive or credible evidence that anyone other than the plaintiffs and their family used these parcels under a demand or claim of ownership." We conclude that the court's determination comports with the legal principles relating to exclusive possession in the context of adverse possession established in the case law.

After reviewing the record, we conclude that because the defendants had not purchased their property on Madeline Avenue until after the plaintiffs already had obtained title to the disputed property by adverse possession, any claim of ownership that the defendants asserted on the basis of their use of the property was too late to affect the exclusivity of the plaintiffs' use during the period within which adverse possession was established initially. See *Roche* v. *Fairfield*, supra, 186 Conn. 501 n.11.

B

The defendants further claim that the court's articulation that the plaintiffs had satisfied the elements of

adverse possession from 1978 until the time of trial contradicts the court's finding that the defendants had established a prescriptive easement over a portion of the disputed parcels. The defendants argue that the court's findings are illogical, as a matter of law, and must be reversed. We do not agree.

The court's finding that the defendants possessed a prescriptive easement is a finding of fact. "[Findings of fact] that there had been an open, visible, continuous and uninterrupted use for fifteen years under a claim of right, as found by the trial court, are not reviewable unless the subordinate facts on which they are based are legally and logically inconsistent or are insufficient to support the conclusion that they exist." (Internal quotation marks omitted.) *Gallo-Mure* v. *Tomchik*, 78 Conn. App. 699, 704, 829 A.2d 8 (2003).

We begin our analysis by setting forth the elements necessary to establish a prescriptive easement. "[A] prescriptive easement is established by proving an open, visible, continuous and uninterrupted use for fifteen years made under a claim of right. . . . The standard of proof that is required is a fair preponderance of the evidence." (Citation omitted.) *Gioielli* v. *Mallard Cove Condominium Assn., Inc.*, 37 Conn. App. 822, 829, 658 A.2d 134 (1995). "To establish an easement by prescription it is absolutely essential that the use be adverse. It must be such as to give a right of action in favor of the party against whom it has been exercised. . . . The use must occur without license or permission and must be unaccompanied by any recognition of [the right of the owner of the servient tenement] to stop such use." (Citation omitted; internal quotation marks omitted.) *Kelley* v. *Tomas*, 66 Conn. App. 146, 159, 783 A.2d 1226 (2001). "Use by express or implied permission or license cannot ripen into an easement by prescription." (Internal quotation marks omitted.) *Gallo-Mure* v. *Tomchik*, supra, 78 Conn. App. 705.

The legal criteria for adverse possession and prescriptive easements are not interchangeable. "Prescriptive easements, unlike title gained by adverse possession, do not require exclusive use by the claimant . . . and the burden of proof is by preponderance of the evidence rather than by clear and convincing evidence required by adverse possession." (Citation omitted.) Id., 706 n.4. After reviewing the record and transcripts, we conclude that the facts presented to the court clearly indicated that the defendants did not exclusively use the parcels and that their use was not continuous and uninterrupted.

The facts found by the court indicate that both the plaintiffs and the defendants used and maintained parcels B1 and B2. Because descriptions of parcels B1 and B2 were contained in the deed of 5 Madeline Avenue, the defendants believed that they were the owners of the disputed parcels. The defendants began to use the beach area for recreation beginning in 1978. The defendants also cleaned the parcels during the years following their purchase of 5 Madeline Avenue. The defendants built stairs on parcel B1 and, on at least one occasion, had sand placed on the disputed parcels.

The court found that the plaintiffs' and the defendants' use of parcels B1 and B2, at times, were with the other's knowledge and without the other's consent.[12] Until 1997, there is no evidence of serious conflicts arising from the plaintiffs' and the defendants' use of the disputed parcels.[13] The court found that "[t]he evidence

---

[12] The court rejected the plaintiffs' evidence that asserted that the defendants never used the disputed parcels without the consent or permission of the plaintiffs.

[13] In 1997 through 1999, the plaintiffs and their family used parcels B1 and B2 more frequently. In 1997, the plaintiffs' family began to construct a concrete ramp on parcel B2. Louis Allen Conner, Jr., objected to the plaintiffs' construction of the ramp and destroyed part of the ramp with a hammer. In 1999, the Westport police department received four complaints concerning activity on the disputed parcels.

indicates that to the extent that there were any . . . discussions [concerning ownership of the disputed parcels], either one of the plaintiffs or one of the defendants both expressed ownership of these parcels."[14]

The court's articulation does present some confusion. If the plaintiffs had adversely possessed the disputed parcels before 1978, per the court's initial opinion, then the plaintiffs would have obtained title to the disputed parcels commencing in 1978 at the latest. The court's articulation indicates, however, that the plaintiffs adversely possessed parcels B1 and B2 until the time of trial. The defendants claim that the court's ruling is inconsistent. They claim that the court found that both the plaintiffs and the defendants adversely used the property between 1978 and the time of trial. We disagree.

"One specific purpose of a motion for articulation of the factual basis of a trial court's decision is to clarify an ambiguity or incompleteness in the legal reasoning of the trial court in reaching its decision." (Internal quotation marks omitted.) *Journal Publishing Co.* v. *Hartford Courant Co.*, 261 Conn. 673, 688, 804 A.2d 823 (2002). Although the court's articulation does not make its decision as clear as we would prefer, we conclude, after reading the articulation along with the entirety of the court's opinion, that the articulation merely intended to clarify that the plaintiffs' title to parcels B1 and B2 had not been disrupted as of the time of the trial. The court determined, in its initial opinion, that the plaintiffs' use of parcels B1 and B2 in the years following 1978 coincided with the defendants' use of those parcels. The defendants' use, however, was not exclusive and did not serve to oust the plaintiffs or

---

[14] For example, when the plaintiffs built the wall dividing parcel B1 in 1986, Louis Allen Conner, Jr., asked Domenico Boccanfuso to remove it and he refused.

result in the defendants' adverse possession of the property. The defendants' use, however, was sufficient to establish a prescriptive easement over parcels B1 and B2.

Accordingly, we conclude that the court's decision that the defendants had obtained a prescriptive easement is not illogical or inconsistent with the court's finding that the plaintiffs adversely had possessed the parcel. We conclude, therefore, that the defendants' claim must fail.

## II

We next review the defendants' claim that their use of parcels B1 and B2 during the years since 1978 was sufficient to disturb the plaintiffs' title to the parcels that they had established by adverse possession and to establish the defendants' own claim of adverse possession. After reviewing the record, we conclude that the court properly determined that the defendants' use of parcels B1 and B2 after 1978, at which time the defendants owned the 5 Madeline Avenue property, did not interrupt the plaintiffs' title to parcels B1 and B2.

"When a party is once dispossessed it is not every entry upon the premises without permission that would disturb the adverse possession." (Internal quotation marks omitted.) *Ahern* v. *Travelers Ins. Co.*, 108 Conn. 1, 7, 142 A. 400 (1928). The court found that the defendants' use of the parcels in dispute was not sufficient to disturb the plaintiffs' title to parcels B1 and B2. We agree.

The court found that "[t]he fifteen year period of adverse possession was satisfied at least by 1970 before the [defendants] or their predecessors in title, the Donahues, acquired title to 5 Madeline Avenue. Based on the findings of fact, since the 1950s, the plaintiffs or their family have used and maintained the beach

area, including parcels B1 and B2, openly and visibly under a claim of right, and they have done so with an intent to use the parcels exclusively and in derogation of the ownership rights of anyone else. This conclusion clearly is established by the conduct of the plaintiffs before and after the [defendants'] purchase of 5 Madeline Avenue, but most particularly by the dumping of materials and the construction of seawalls over the years through the use of parcels B1 and B2, as well as by the creation or maintenance of ramps on these parcels to facilitate these and other activities. For example, the plaintiffs constructed a wall dividing almost two-thirds of parcel B1. . . . The fact that the plaintiffs paid the taxes on the property is also strong evidence of their exclusive and adverse claim." Accordingly, because the court determined that the plaintiffs had satisfied the fifteen year period of adverse possession by 1970, the plaintiffs had obtained title to parcels B1 and B2 by 1970. The prior owner of record had been dispossessed, and the plaintiffs obtained legal title to the disputed parcels.

The defendants claimed that the evidence presented was sufficient to establish that they satisfied the elements of adverse possession. The court found that the defendants had not proven by clear and convincing evidence that they acquired ownership of parcels B1 and B2 through adverse possession. Although the defendants proceeded to use the parcels under a claim of right after they purchased the 5 Madeline Avenue property and did not always obtain the permission or consent of the plaintiffs prior to using the property, the court found that the defendants' use of the property was not "sufficiently notorious, exclusive and continuous to constitute an ouster to satisfy the strict criteria of adverse possession."

Ouster has been defined clearly in case law. "By ouster is not meant a physical eviction, but a possession

attended with such circumstances as to evince a claim of exclusive right and title, and a denial of the right of the other tenants to participate in the profits. As otherwise stated: An entry . . . on the land of another, is an ouster of the legal possession arising from the title . . . if made under claim and color of right . . . otherwise it is a mere trespass. . . . The intention guides the entry, and fixes its character." (Internal quotation marks omitted.) *Lucas* v. *Crofoot*, 95 Conn. 619, 623–24, 112 A. 165 (1921).

The court properly applied the law and properly weighed the evidence relating to the parties' use of parcels B1 and B2, and logically concluded that the plaintiffs' construction of the dividing wall and their payment of the property taxes were sufficient indicators to counter the defendants' adverse possession claim. The record contains sufficient evidence that the plaintiffs continued to use the parcels in a manner that counters the defendants' claim of exclusive right and title. We conclude, therefore, that the court properly found that the defendants' use of parcels B1 and B2 was not sufficient to constitute an ouster of the plaintiffs.

After reviewing the record, we conclude that the court gave proper credence to the facts presented and drew logical legal conclusions. The parties provided the court with ample evidence and testimony concerning their use of the disputed parcels. A trial court is in the best position "to determine issues of credibility because it observed the demeanor of witnesses, and we have but the dry record of their testimony." *Gallo-Mure* v. *Tomchik*, supra, 78 Conn. App. 715. Accordingly, we give deference to the court's function to derive the veracity of the facts, and we conclude that the court properly weighed the facts relating to the plaintiffs' maintenance and use of the disputed parcels and that the court properly determined that the plaintiffs' use of parcels B1 and B2 established exclusive possession.

Accordingly, the court properly found that the plaintiffs had proven that they obtained ownership of parcels B1 and B2 through adverse possession and maintained title to the parcels to the time of the trial. Thus, we conclude that the court did not act improperly in finding that the defendants had not proven their claim of adverse possession of parcels B1 and B2.

The judgment is affirmed.

In this opinion the other judges concurred.