## BRUMBAUGH et al. v. GOMPERS et al.

(Court of Appeals of District of Columbia.    Submitted October 13, 1920.    Decided November 8, 1920.)

No. 3381.

1. **Adverse possession ⬅➡66(1)—Possession beyond true line to established boundary is adverse.**

    Possession by a lot owner for 30 years to a boundary clearly defined by a fence and building, which was beyond the true boundary of the lot, is adverse possession to the established boundary.

2. **Adverse possession ⬅➡43(3)—Transfer of property sustains tacking of possession beyond true boundary.**

    Proof of regular conveyances of the title to a lot is sufficient to sustain a tacking of adverse possession by the lot owners of a strip between the true boundary of the lot and an established fence, to which the owners claimed, though that strip was not included in the description in the conveyances.

3. **Injunction ⬅➡113—Plaintiff held to have waived right to mandatory injunction for removal of building.**

    Where a lot owner, at the time construction of a building on the adjoining lot was begun, claimed title to a strip beyond the true line by adverse possession, whereupon the work was stopped until the owner wrote a letter, which might have been reasonably construed as a surrender of the right by adverse possession, the right to a mandatory injunction for removal of the building after several stories had been completed, so that the removal would have cost a large sum, was waived.

4. **Injunction ⬅➡195—After waiver of right to injunction, equity can require compensation for land occupied by building.**

    Where a lot owner had waived his right to a mandatory injunction for the removal of a building which encroached upon his premises, equity can nevertheless require the owner of the building to pay just compensation for the strip taken.

Appeal from the Supreme Court of the District of Columbia.

Suit for mandatory injunction by Catherin E. Brumbaugh and another against Samuel Gompers and others, trustees of the American Federation of Labor, and others. There was a decree dismissing the bill, and complainants appeal. Reversed and remanded.

Andrew Wilson and J. P. Schick, both of Washington, D. C., for appellants.

J. H. Ralston, of Washington, D. C., for appellees.

ROBB, Associate Justice. This is an appeal from a decree in the Supreme Court of the District, dismissing appellants' bill for a mandatory injunction requiring the removal of so much of appellees' building as encroaches upon appellants' premises, known as No. 905 Massachusetts Avenue Northwest, in this city, and "for such other and further relief as to the court may seem proper and the exigencies of the case may require."

Prior to 1873, Marion F. Thompson was the owner of land in this city, which, by subdivision in 1879, became in part lots 11, 12, and 13, in square 370. In 1882 Marion F. Thompson conveyed lot 13 to Fran-

---

⬅➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

cis G. Middleton, who, by will dated August 18, 1882, devised the lot to his wife, Ida M. Middleton. On June 19, 1906, Mrs. Middleton, then the wife of William O. Shumate, conveyed to the appellant Catherin E. Brumbaugh. Marion F. Thompson died in 1905, and by her will devised above lots 11 and 12, which lots, under partition proceedings, were conveyed to appellees on August 13, 1915. It thus appears that the parties hereto derived their titles from a common source; the purchase by appellants antedating that of the appellees.

Lots 11, 12, and 13 form the northwestern corner at Massachusetts avenue and Ninth Street Northwest; the three lots running back to an alley and lot 13 being west of lot 12. Prior to the erection of appellants' dwelling house in 1883, and before there was any building upon the southern or front part of lot 12, there were two old buildings extending north and south on the rear portion of lot 12—the northerly building being 30 feet long and reaching almost to the alley; the other building being a little more than 20 feet long. Connecting the westerly walls of these two old buildings was a permanent fence. The uncontradicted and convincing evidence is to the effect that, since the erection of appellants' dwelling house on lot 13 in 1883, the owners of that lot have had open, actual, and exclusive possession of the land up to the walls of the two old buildings and the fence connecting them, and thence to a line running in a southerly direction to the northeast corner of the dwelling house. In the rear of lot 13, and along its easterly side, was a brick walk extending to the alley. After appellees had acquired title to lots 11 and 12, lot 12 was surveyed, and the westerly line found to encroach to some extent upon the land that had been in the possession of appellant Catherin E. Brumbaugh and her predecessors in title since 1883, including, of course, a part of the brick walk.

In July of 1915, after appellees had arranged for the purchase of lots 11 and 12, plans were prepared for the erection of a seven-story fireproof structure on those lots. These plans were seen by the appellant Dr. Brumbaugh, who acted for his wife throughout, and he made certain suggestions looking to the safeguarding of his wife's interests, but nothing was said at that time as to any claim by adverse possession. In the early part of November following, when the excavation for the foundation of the new building had reached the rear portion of lot 12, appellants discovered that the excavation extended west of the line of the old buildings and fence already mentioned, and thus encroached to some extent upon the land claimed by the appellants. Thereupon the superintendent of construction was notified that "he must stay on the far side of the dividing line, which had been held since 1883." That this line then was pointed out to the superintendent there can be no doubt. Appellants say the work then was discontinued for several weeks, but the superintendent testifies that in about a week he received orders from his superiors to proceed, and that work then was resumed immediately. We incline to the view that the recollection of the superintendent is correct on this point. A week after the notice had been given the superintendent, appellants wrote the following letter to the architects:

"In consideration of your assurances in our recent conversation at your office, and especially that the building of the A. F. of L. will not cut into or encroach upon the east wall of our residence—that wall and the retaining wall in the rear line of the property having stood intact since 1870; since before 1877 (more than 30 years)—and the further fact that your wall in the rear portion of the lot will be kept away from the line dividing the properties, we have decided to permit the dividing rear wall to be taken down (proper temporary protection to be put up to prevent accident on our side). In this connection it should be borne in mind that this fence has retained a legal right to a little more distance than the D. C. surveyor would seem to give us in his line through the said wall (by reason of adverse possession over 38 years). Every inch of ground in the rear is of importance to us in the way of light and air. The contractor has said that he will take off a foot from the east end of our rear shed, to permit egress and ingress from the alley, and promptly restore everything to its proper condition on our property. The air shaft and dead walls opposite our house are to be whitened, and the chimneys carried up to protect our draft."

Appellants, of course, noted the progress of the work on the new building and testified that they "protested constantly to those connected with the work"; but no written protest was made until March 9, 1916, when the building had progressed to the second or third story. On that date appellees were notified of appellants' claim, and asked "whether these matters can be adjusted amicably, or whether it will be necessary to look to legal protection of our legal rights, which seem to have been wholly overlooked through disregarding 'adverse possession,' " as above noted. On March 20th appellants, in a further communication, suggested that the matter be submitted to arbitration; but, appellees making no response, the present bill was filed April 11th following.

The court below, being of opinion that "a case for equitable relief had not been made out," and "that adverse possession had not been shown," dismissed the bill.

[1] We are unable to accept the finding of the trial court that adverse possession has not been shown. The evidence is uncontradicted that for a period of more than 30 years the eastern boundary of lot 13 was not the line as surveyed for the sale to appellees, but the line claimed by appellants and formed by clearly defined boundaries. In our view, no clearer case of adverse possession could be made. Rudolph v. Peters, 35 App. D. C. 438, Ann. Cas. 1912A, 446; Johnson v. Thomas, 23 App. D. C. 150.

[2] Some suggestion is made that there has been no tacking of possession, within the meaning of the law. This contention may be put out of view by a citation of the following authorities: Reid v. Anderson, 13 App. D. C. 30; Lea v. Polk County Copper Co., 21 How. 493, 16 L. Ed. 203; Ill. Steel Co. v. Paczocha, 139 Wis. 23, 119 N. W. 550; St. Louis S. W. Ry. Co. v. Mulkey, 100 Ark. 71, 139 S. W. 643, Ann. Cas. 1913C, 1339; Viking Co. v. Crawford, 84 Kan. 203, 114 Pac. 240, 35 L. R. A. (N. S.) 498; 2 C. J. 82, 83.

[3] We come now to a more serious question. Appellants knew early in November, that it was the purpose of appellees to follow the surveyor's line, and, while the verbal notice to the superintendent was sufficient to apprise appellees of the adverse claim, appellants'

attitude thereafter was equivocal. The letter of November 11th was susceptible of the interpretation that appellants, under certain conditions, would permit more or less of an encroachment upon their premises. Appellants now say they did not mean to yield any of their rights, and that, in any event, appellees did not fulfill conditions mentioned in the letter. The fact remains, however, that before taking any definite action appellants permitted the erection of the building to proceed up to the third or fourth story, when they must have known that a change in the building wall to conform to their claim would cost thousands of dollars. Having in mind that the encroachment upon appellants' premises was comparatively slight, that the surveyor's line was followed, and that there was no willful disregard of appellants' rights, we are of the view that appellants are in no position to ask a court of equity to have the encroaching portion of the building removed. It will be noted that, upon receipt of appellants' notice by the superintendent, work was discontinued until a time subsequent to the letter of November 11th. Instead, therefore, of adhering to the letter of the notice theretofore given, appellants assumed a less definite attitude, resulting in the resumption of the work. Appellees than may have concluded that, if appellants' claim finally was established, in no event would appellants demand more than compensation for the land taken. If appellants then intended to insist upon their legal right to actual possession of the land in dispute, rather than upon their right to compensation therefor, the situation was such as to require more definite action than was taken by them, and, should a court of equity now grant the relief prayed, an injustice would be done the appellees. Whitney v. Union R. Co., 11 Gray (Mass.) 359, 71 Am. Dec. 715; Smith v. Spencer, 81 N. J. Eq. 389, 87 Atl. 158; Roberts v. Nor. Pac. R. Co., 158 U. S. 1, 15 Sup. Ct. 756, 39 L. Ed. 873.

[4] But appellees have appropriated some of appellants' land, and, while appellants may not recover possession, equity requires that they receive compensatory damages. Indeed, in the argument at bar counsel for appellees conceded that if appellants' claim of adverse possession was sustained, they would be entitled to compensatory damages. While appellants waived their right to have their property restored, it would be an unconscionable thing to rule that they had made a gift of it to the appellees. We are satisfied that they intended no such thing.

The decree must be reversed with costs, and the cause remanded for further proceedings in conformity with this opinion.

Reversed and remanded.