*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 17-CV-22

ORON and REBECCAH GAN, APPELLANTS,

v.

VAN BUREN STREET METHODIST CHURCH, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CAB-8393-15)

(Hon. Thomas J. Motley, Trial Judge)

(Argued March 27, 2018                                    Decided)

*Aaron Sokolow*, with whom *Morris R. Battino* and *Vivianette Velázquez* were on the brief, for appellant.

*Robert Maxwell* for appellee.

Before THOMPSON and MCLEESE, *Associate Judges*, and RUIZ, *Senior Judge*.

Opinion for the court by *Associate Judge* MCLEESE.

Separate statement by *Associate Judge* THOMPSON at page 20.

Dissenting opinion by *Senior Judge* RUIZ at page 21.

MCLEESE, *Associate Judge*: Appellants Oron and Rebeccah Gan and appellee Van Buren Street Methodist Church own adjacent properties, and they dispute ownership of a driveway that touches the border between the two properties. The

Gans challenge the trial court's grant of summary judgment to the Church. We vacate and remand for further proceedings.

**I.**

The following facts are undisputed except as indicated. The Gans own a property located at 6638 Eastern Avenue NW. The Church owns an adjacent property located at 35 Van Buren Street NW. The Church's deed includes the property at issue in this case: a paved driveway, approximately ten feet wide, running from the back of the Church's property to Eastern Avenue, parallel to the Gans' property line.

The Gans purchased 6638 Eastern Avenue from Ms. Bernice Harleston in 2008. The deed conveyed "all that/those certain piece(s) or parcel(s) of land, together with the improvements, rights, privileges and appurtenances to the same belonging . . . as described in Exhibit A attached hereto and made a part hereof." Exhibit A, attached to the deed, describes the bounds of the Gans' property (which do not include the driveway), and also describes "a right of way more particularly described in Liber 8973 at folio 581, of [the D.C.] land records." Liber 8973 at folio 581 recorded an easement over the driveway.

It is uncontested that according to the pertinent deeds the Church is the title owner of the driveway. The Gans argue, however, that they are the rightful owners of the driveway under the doctrine of adverse possession. "To establish title by adverse possession, appellants must demonstrate possession of the land that is actual, open and notorious, exclusive, continuous, and hostile, throughout a period of fifteen years." *Sears v. Catholic Archdiocese*, 5 A.3d 653, 658 (D.C. 2010) (internal quotation marks omitted). According to the Gans, by no later than 2000 Ms. Harleston put up a fence that prevented the Church from gaining access to the driveway. The Gans further allege that the fence remained in existence thereafter, although at some point the original fence was replaced by a wooden fence. In support of their adverse-possession claim, the Gans submitted an affidavit executed by Ms. Harleston in 2016. In the affidavit, Ms. Harleston attested that her purchase deed had referred to "an easement area on the property (the 'Easement')"; that in 2000 she put a fence across the Easement to prevent access to the property; that she maintained that fence until she sold the property; that she had believed that she owned the Easement; and that she had intended to convey ownership of the Easement to the Gans.

The Gans claim that they are entitled to "tack" Ms. Harleston's period of adverse possession onto their own, thereby meeting the fifteen-year threshold. *See generally, e.g.*, *Tacking*, Black's Law Dictionary (10th ed. 2014) ("The joining of consecutive periods of possession by different persons to treat the periods as one consecutive period; esp., the adding of one's own period of land possession to that of a prior possessor to establish continuous adverse possession for the statutory period.").

The Church disputes as a matter of fact that there has been a fence since 2000 preventing its use of the driveway. That factual dispute, if material, would have to be decided at a trial. For current purposes, we assume the truth of the Gans' contention that Ms. Harleston and the Gans have adversely possessed the driveway since 2000. The Church also argues, however, that as a matter of law the Gans are not entitled to base their adverse-possession claim in part on the time before they purchased their property, because the deed from Ms. Harleston to the Gans did not by its terms convey either title to the driveway or an inchoate adverse-possession interest in the driveway.

The trial court granted summary judgment to the Church on the ground that tacking was precluded because the deed from Ms. Harleston to the Gans on its face

did not convey title to, or an inchoate adverse-possession interest in, the driveway, instead conveying only the right to an easement over the driveway.

## II.

We review de novo a trial court's grant of summary judgment, viewing the evidence in the light most favorable to the non-moving party. *Sears*, 5 A.3d at 657. "If there are no disputed issues of material fact, summary judgment is appropriate if the movant is entitled to judgment as a matter of law." *Id.* The Church suggests in passing that the Gans failed to preserve in the trial court the arguments they present in this court. To the contrary, we conclude that the Gans' opposition to the Church's motion for summary judgment adequately preserved the issues that we decide in this opinion.

The central issue in this appeal is whether the Gans are foreclosed as a matter of law from tacking Ms. Harleston's period of adverse possession onto their own. We conclude that, under controlling precedent, the Gans may tack Ms. Harleston's period of adverse possession onto their own if they can prove at trial by clear and convincing evidence that Ms. Harleston intended to grant them possession of the disputed driveway.

**A.**

Almost one hundred years ago, the Court of Appeals for the District of Columbia approved the tacking of periods of adverse possession in circumstances very similar to those of the present case. *Brumbaugh v. Gompers*, 269 F. 472 (1920). *Brumbaugh* involved a dispute that arose in 1915 about the ownership of a strip of land. *Id.* at 473. Under the applicable deeds, the defendants held fee title to the strip of land. *Id.* The plaintiff had bought an adjacent property in 1906 and was in actual possession of the disputed strip thereafter. *Id.* That period of possession, however, was not sufficient to meet the then-applicable thirty-year period required to establish adverse possession. *Id.* The prior owners who sold the adjacent property to the plaintiff, however, had been in actual possession of the disputed strip of land back to at least 1883. *Id.* In response to the suggestion that the two periods of possession could not be tacked, the court explicitly held to the contrary. *Id.* ("Some suggestion is made that there has been no tacking of possession, within the meaning of the law. This contention may be put out of view by a citation of the following authorities . . . ."). The cited authorities included *St. Louis Southwestern Railway Co. v. Mulkey*, 139 S.W. 643, 644 (Ark. 1911) ("While it is true that the land described in the deed . . . does not include the strip in controversy, still [appellee's]

grantor . . . thought it did, and at the time of the conveyance transferred to her the possession of it in fact . . . . This was sufficient even if it be conceded there was no conveyance of it in writing, and constituted such privity as entitled [appellee] to avail of his or their adverse possession and to tack her possession to theirs if necessary to complete her title and claim of ownership."); *Viking Refrigerator & Manufacturing Co. v. Crawford*, 114 P. 240, 240-41 (Kan. 1911) (approving tacking of periods of adverse possession by successive occupants; rejecting view that tacking is permitted only if deed or other writing transfers adverse-possession interest, and approving principle that "[a]ll the law requires is continuity of possession, where it is actual") (internal quotation marks omitted); and *Illinois Steel Co. v. Paczocha*, 119 N.W. 550, 552 (Wis. 1909) (approving tacking of periods of adverse possession where there is privity between successive occupants, but required privity is "merely [that of] physical possession, and is not dependent on any claim, or attempted transfer, of any other interest or title in the land").

In *Brumbaugh*, tacking was held proper where (1) there was continuous adverse possession of the disputed property by two successive occupants who owned an adjacent property, and (2) the first occupant sold the adjacent property to the second occupant. 269 F. at 472-74. *Brumbaugh* thus adopted what was then and continues to be the majority approach to the issue of tacking. *See, e.g.*, 16 Michael

Allan Wolf, *Powell on Real Property* § 91.10[2], at 91-76 (2009) ("When, however, *A* conveys Blackacre to *B*, and *B* then seeks to claim[] adverse possession of adjacent land not covered by the deed, and wishes to tack the possession to prior possession by *A*, the cases are not unanimous. It is believed that both the weight of authority, and the more desirable rule, find privity in these circumstances, and so permit tacking."); 3 Am. Jur. 2d *Adverse Possession* § 73 (2013) ("Thus, if one adverse claimant, by agreement, surrenders possession to another, and the acts of the parties are such that the two possessions actually connect, leaving no interval for the constructive possession of the true owner to intervene, the two possessions are blended into one, and the running of the limitation period on the right of the true owner to reclaim the land is continued."); *id.* at § 76 ("If, in connection with a conveyance of lands, there are circumstances showing an intent to transfer to the grantee the possession of other adjacent land occupied by the grantor, but not covered by the deed, there is privity, and the grantee is entitled to tack the period of the grantor's occupancy to the grantee's own in establishing title by adverse possession to the land not conveyed."); 2 C.J.S. *Adverse Possession* § 172 (2013) ("Most particularly where the claimant relies on an actual transfer rather than on a deed to establish privity of possessions, the failure of the deed to pass the disputed land will not destroy the privity. Successive adverse possessions of property omitted from a deed description, especially contiguous property, may be tacked if it appears

that the adverse possessor intended to and actually turned over possession of the undescribed part with the portion of the land included in the deed. Where land that is adversely held, adjoins land described in a deed, but is not described in the deed, and continues to an obvious boundary, such as a fence, the grantor's intent to convey the entire enclosed area is implied from the circumstances.") (footnotes omitted); 4 Herbert Thorndike Tiffany, *The Law of Real Property* § 1146, at 776 (1975) (privity required to permit tacking may be based "upon any connecting relationship which will prevent a break in the adverse possessions and refer the several possessions to the original entry, and for this purpose no written transfer or agreement is necessary"); W.W. Allen, Annotation, *Tacking Adverse Possession of Area not within Description of Deed or Contract*, 17 A.L.R.2d 1128, 1131-32 (1951) ("At the present time, making allowance for contrary rulings still apparently adhered to in a few jurisdictions, the cases, especially the later ones, run generally to the effect that in order to permit the tacking of successive adverse possessions of vendor and purchaser of an area not within the premises as described in the deed or contract but contiguous thereto, the composite fact to be established is the intended and actual transfer or delivery of possession of such area to the grantee or vendee as successor in ownership or claim.") (footnotes omitted); *id.* at 1135 ("In most jurisdictions a transfer of possession of the disputed area sufficient for tacking purposes may be shown to have taken place by implication and without express words or any

ceremony of transfer."); 2 C.J. *Adverse Possession* § 97 (1915) ("[S]uccessive grantors may transfer their possession of a strip of land successively and continuously occupied as part of the granted premises, but not included in the description in any of the deeds, and . . . by such continuity of possession for the prescriptive period title by limitations may be acquired.").

*Brumbaugh*'s holding is binding on divisions of this court. *Davidson v. United States*, 137 A.3d 973, 974 n.2 (D.C. 2016) ("[C]ases decided by the United States Court of Appeals for the District of Columbia Circuit (and its predecessors) prior to February 1, 1971, are part of the case law of this court."; citing inter alia 1896 decision of the Court of Appeals for the District of Columbia); *M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C. 1971) ("[N]o division of this court will overrule a prior decision of this court or refuse to follow a decision of the United States Court of Appeals rendered prior to February 1, 1971, and . . . such result can only be accomplished by this court en banc.") (footnote omitted).

The Gans contend that the trial court erred in concluding that the periods of adverse possession at issue could be tacked only if the deed conveying property from Ms. Harleston to the Gans on its face conveyed an adverse-possession interest in the driveway. In deciding that contention, we are bound to follow *Brumbaugh* even

though no party brought *Brumbaugh* to the attention of the trial court and the initial briefs of the parties in this court did not cite *Brumbaugh*. *See, e.g.*, *Martin v. Bicknell*, 99 A.3d 705, 709 (D.C. 2014) ("While both parties have failed to cite to them, we have identified a number of decisions on this subject, which, while old, are still binding precedent."); *Mims v. Mims*, 635 A.2d 320, 323 (D.C. 1993) ("Our obligation under *M.A.P. v. Ryan* to follow otherwise binding precedents does not evaporate because a party has failed to cite them to us."). (At the court's request, the parties did file supplemental briefs addressing *Brumbaugh*.)

Rather than addressing *Brumbaugh*, the trial court focused on *Sears*, our most recent decision addressing the issue of tacking for purposes of adverse possession. *Sears* did not mention *Brumbaugh*, instead inaccurately stating that this court had "not had the occasion to discuss tacking in the context of adverse possession to claim ownership in land." 5 A.3d at 662. *Sears* also said seemingly contradictory things about whether tacking is permissible where no deed explicitly transfers an adverse-possession interest in the property at issue. *Compare* 5 A.3d at 662 ("[W]here title by adverse possession is inchoate, a deed by [a] grantor which fails to convey such inchoate right is ineffective to create privity which allows tacking.") (brackets and internal quotation marks omitted), *with id.* ("Generally, for the purpose of effecting title by adverse possession, where the traditional requisites are present, tacking of

periods of possession by successive possessors is permitted against an owner seeking to defeat such title, unless it is shown that the claimant's predecessor in title did not intend to convey the disputed parcel.") (internal quotation marks omitted). We need not attempt to further parse our decision in *Sears* on this issue, however, because even if *Sears* were properly understood to have held that an express conveyance is required, we are bound to follow *Brumbaugh* rather than *Sears*. *See, e.g.*, *Thomas v. United States*, 731 A.2d 415, 420 n.6 (D.C. 1999) ("Where a division of this court fails to adhere to earlier controlling authority, we are required to follow the earlier decision rather than the later one.").

In sum, we hold that the trial court erred in concluding that tacking was precluded in this case unless the deed on its face conveyed an adverse-possession interest from Ms. Harleston to the Gans.

**B.**

The holding that express conveyance is not a prerequisite to tacking does not fully resolve this appeal. A number of courts following the general rule permitting tacking in the absence of express conveyance carve out an exception to that general rule where (a) the deed at issue expressly excludes the disputed parcel or (b) the

seller did not intend to turn over possession of the disputed parcel to the buyer. *E.g.*, 2 Am. Jur. 2d *Adverse Possession* § 77; 2 C.J.S. *Adverse Possession* § 172. This court in *Brumbaugh* did not address the question whether such exceptions should be recognized, presumably because no such argument was presented to the court. 269 F. at 472-74. *Sears*, however, did address a similar argument, and concluded that as to two of the lots at issue the prior owner "expressly disavowed" conveyance of rights to the disputed property. 5 A.3d at 663. Specifically, as to one of those lots, the deed had an attached plat expressly stating that the disputed property was not being conveyed; and as to the other lot the seller orally advised the purchaser that the disputed property at issue did not convey. *Id.* *Sears* held that these disavowals were an additional reason to preclude tacking. *Id.* *Sears*'s recognition that express disavowal will preclude tacking is not contrary to our holding in *Brumbaugh*, and it is therefore binding on us. More generally, we accept the principle that a period of adverse possession by a prior owner may not be tacked if (1) the prior owner expressly disavows transfer of an interest in the disputed property to the subsequent owner, or (2) the party claiming adverse possession fails to show by clear and convincing evidence that the prior owner intended to turn over to the subsequent owner possession of the property in dispute. *See generally Sears*, 5 A.3d at 658 ("[T]he party seeking to establish a claim by adverse possession has the burden of doing so by clear and convincing evidence.") (internal quotation marks omitted).

The dissent, however, argues for a different exception to the majority approach we adopted in *Brumbaugh*. *Infra* at 25-36. That exception apparently is as follows: tacking is generally impermissible if the deed at issue in any way mentions, but does not convey, the disputed property. *Id.* at 33-35. That is not the exception we applied in *Sears*, in which we emphasized that the sellers of the property at issue "expressly disavowed" an intent to transfer the disputed property. 5 A.3d at 663. Nor do the other cited authorities support the formulation advocated by the dissent. Some do state that actual transfer of possession is ordinarily sufficient to permit tacking when the deed at issue omits reference to the disputed property. *E.g.*, 2 C.J.S. *Adverse Possession* § 172 (referring to property omitted from deed description). But those authorities do not state the converse proposition apparently advanced by the dissent: that tacking is precluded any time the deed at issue makes any mention of the disputed property. Moreover, a number of the authorities at various points use formulations that contradict the theory of the dissent. *See, e.g.*, *Viking Refrig.*, 114 P. at 240-41 ("All the law requires is continuity of possession, where it is actual.") (internal quotation marks omitted); Tiffany, *The Law of Real Property* § 1146, at 776 (tacking may be based "upon any connecting relationship which will prevent a break in the adverse possessions and refer the several possessions to the original entry, and for this purpose no written transfer or

agreement is necessary"). Finally, the dissent's theory would seemingly lead to unjustified results. For example, imagine a case involving a deed that referred generally at some point to an adjacent alley but did not by its terms convey the alley. According to the theory of the dissent, tacking would be precluded in such a case, even if (1) the deed did not expressly disavow conveyance of the alley; (2) the parties to the deed established that the mutual intent was to convey the alley and that the property description in the deed was inadvertently erroneous; and (3) the seller had previously possessed the alley openly and notoriously; (4) contemporaneously with the sale, the seller relinquished actual possession of the alley to the buyer; (5) thereafter, the buyer possessed the alley openly and notoriously; and (6) taken together, the two periods of open and notorious possession exceeded fifteen years. Such a conclusion would be inconsistent with the logic of the majority approach to tacking that we adopted in *Brumbaugh*.

## 1.

In granting summary judgment to the Church, the trial court did not rely on exceptions to the general rule we adopted in *Brumbaugh*. It also is not entirely clear whether the Church relies on such exceptions in this court. The dissent, however, takes the view that the trial court's summary-judgment ruling can be upheld on the

alternative grounds that (1) the deed between Ms. Harleston and the Gans expressly disavowed transfer of an ownership interest in the driveway, *infra* at 37-38; and (2) Ms. Harleston's affidavit was insufficient to support a finding that Ms. Harleston intended to transfer an ownership interest in the driveway to the Gans, *infra* at 35 n.10, 37-38. We disagree.

First, the deed between Ms. Harleston and the Gans did not contain any express disavowal as to the driveway. It is true that the driveway did not fall within the bounds of the property transferred in fee simple by the deed. It is also true that the deed explicitly conveyed an easement over the driveway. But that only shows that the deed did not affirmatively transfer any ownership interest to the driveway. Our holding in *Brumbaugh* establishes that the mere absence of such an affirmative grant of title is not fatal to tacking. What was present in *Sears* but is missing in the present case is express language of disavowal. Specifically, for example, one of the deeds at issue in *Sears* explicitly stated that the disputed property was not being conveyed. 5 A.3d at 663.

Second, the dissent takes the view that the plain meaning of Ms. Harleston's affidavit is that Ms. Harleston understood herself to be conveying only an easement interest in the driveway, not an ownership interest. *Infra* at 35 n.10. We note at the

outset that the dissent's interpretation of Ms. Harleston's affidavit is contrary to the interpretation given to the affidavit by both parties and by the trial court, all of whom have read the affidavit as reflecting the understanding that Ms. Harleston had and conveyed an ownership interest in the driveway. In any event, we conclude that the dissent's proposed interpretation of Ms. Harleston's affidavit is not at all plain. Ms. Harleston's affidavit notes that her purchase deed referred to an "easement area," an area that the affidavit then defines as "the 'Easement.'" The affidavit goes on to aver that Ms. Harleston put a fence across the Easement to preclude use of the Easement by others. The affidavit concludes by averring that Ms. Harleston believed that she owned the Easement and the she intended to convey the Easement to the Gans. We conclude that this affidavit can reasonably be understood to reflect an intent to convey ownership of the driveway. Most importantly, if Ms. Harleston believed that she only had an easement over the driveway, rather than an ownership interest, she would have had no legal basis to take the step of erecting a barrier to prevent all others from using the driveway. Moreover, the affidavit can reasonably be understood to use the word "Easement" to define an area that Ms. Harleston believed she owned, not a description of Ms. Harleston's legal interest in that area.

**2.**

We finally address two comments the trial court made about Ms. Harleston's affidavit, to explain why those comments do not persuade us that summary judgment is appropriate. First, the trial court noted that Ms. Harleston's affidavit was executed in 2016 and thus was not contemporaneous with the sale of the property. That, however, does not make the affidavit irrelevant to the issue of Ms. Harleston's intent. *See Penn v. Ivey*, 615 P.2d 1, 2, 4 (Alaska 1980) (finding sufficient evidence of intent to support tacking based on trial testimony of parties about intent as to transactions that occurred in 1966 and 1973); *Kennedy v. Findley*, 552 S.W.2d 352, 355 (Mo. Ct. App. 1977) (same as to trial testimony about intent as to transaction that occurred in 1957). Our decision in *Sears* is not to the contrary. In *Sears*, we held that a non-contemporaneous affidavit was not sufficient to contradict the unambiguous language of a deed. 5 A.3d at 661 n.15. But that holding addressed the question whether, despite its unambiguous language, the deed could be interpreted to convey title to the disputed property. That holding in *Sears* did not address the different question whether, considering all of the circumstances, the seller intended to grant an interest in the disputed property sufficient to permit tacking of adverse-possession periods. *Id.*

Second, the trial court interpreted Ms. Harleston's affidavit as reflecting Ms. Harleston's erroneous belief that she owned the driveway at the time of the sale. In

fact, Ms. Harleston at that time did not own the driveway, instead having at most an inchoate adverse-possession interest. Ms. Harleston's mistake as to the precise legal nature of her interest in the driveway, however, does not undermine the relevance of her affidavit to the critical point: whether Ms. Harleston intended to grant to the Gans such interests as she may have had in the driveway. *See generally Smith*, 569 A.2d at 1192 ("[O]ur jurisdiction recognizes the doctrine that a claim of adverse possession may be rooted in ignorance or mistake.") (internal quotation marks omitted).

To summarize, we hold that (1) tacking is permissible in this case even if the deed between Ms. Harleston and the Gans did not convey any ownership or adverse-possession interest in the driveway; (2) tacking would have been precluded if the deed between Ms. Harleston and the Gans expressly disclaimed any transfer of an ownership or adverse-possession interest in the driveway, but there was no such disclaimer in this case; (3) tacking is permissible in this case only if the Gans can show by clear and convincing evidence that Ms. Harleston intended to surrender possession of the driveway to the Gans; and (4) Ms. Harleston's affidavit creates a dispute of material fact on the issue of her intent.

We therefore conclude that the trial court erred in granting summary judgment on the ground that tacking was precluded as a matter of law. In light of our disposition, we need not and do not address the Gans' claim that the trial court erred by granting summary judgment when there was an outstanding discovery request. We also do not address the alternative grounds for summary affirmance raised by the Church for the first time on post-argument supplemental briefing.

For the foregoing reasons, we vacate the judgment of the Superior Court and remand for further proceedings.

*So ordered.*

Separate statement of THOMPSON, *Associate Judge*: I agree with Judge Ruiz that our holding in this case is "problematic from a policy perspective" and that "[t]he rules we adopt to recognize transfer of right to ownership by adverse possession should be in harmony with and not undermine the important purposes underlying the requirement of recordation of deeds: notice, stability, clarity, and certainty." However, I join Judge McLeese's opinion because I agree with him that we are bound by the holding of *Brumbaugh* to reach the result it reaches.

RUIZ, *Senior Judge*, dissenting:  I cannot agree with the majority that the trial court's grant of summary judgment to appellee, the title owner of the disputed driveway, should be reversed and the case remanded to permit further consideration of extraneous evidence of the grantor's intent to convey inchoate adverse possession rights in the driveway to appellants.  Appellants memorialized their transaction with respect to the disputed parcel in a written deed.  As the deed is clear on its face that there was no transfer to appellants of whatever inchoate rights the grantor might have had to the driveway, there is no need to remand to consider parol evidence.  Summary judgment to the title owner was therefore the correct resolution of this case.

The law of adverse possession can be arcane, at times inconsistent, and many times has to be extracted from old cases that do not fully explain their reasoning.  This is even more so when it comes to the rules that apply to tacking of inchoate rights to adverse possession.  But there are certain guideposts.  "'Tacking' has been defined as 'successive, uninterrupted possessions by persons between whom privity exists.  If such tacked possessions constitute one continuous adverse possession for the statutory period it will be sufficient.'"  *Sears v. Catholic Archdiocese of Washington*, 5 A.3d 653, 662 (D.C. 2010) (quoting *Bonds v. Smith*, 143 F.2d 369, 371 (D.C. Cir. 1944).  The rules that govern claims of adverse possession and that

permit tacking of successive periods of adverse possession to satisfy the statutory limitations period are designed to favor the title owner. These rules include 1) the heightened burden of proof imposed on the adverse-possession claimant who must prove his or her claim by clear and convincing evidence[1]; 2) the requirement of privity between those who seek to cumulate periods of adverse possession; and 3) the strict requirement of uninterrupted actual adverse possession between parties with privity. If any of these requirements is not proved by the requisite clear and convincing evidence, tacking is not permitted "because the moment the first occupant quits possession, the constructive possession of the owner is restored, and the entry of the next occupant constitutes him a new disseisor." *Id.* (quoting *Gore v. Hall*, 112 A.2d 675, 678 (Md. 1955)). Whether there has been actual continuous adverse possession for the requisite time even if tacking were allowed in this case is a disputed issue. The question of law that is presented, and on which the trial court granted summary judgement, is whether there is the requisite privity between appellants and their grantor to permit tacking.

---

[1] "Because 'courts presume that one who occupies the land of another does so with the latter's consent,' the party seeking to establish a claim by adverse possession has the burden of doing so by 'clear and convincing evidence.'" *Sears*, 5 A.3d at 658 (quoting *Smith v Tippett*, 569 A.2d 1186, 1190 (D.C. 1990)).

"Privity" is a "connection or relationship between two parties, each having a legally recognized interest in the same subject matter (such as a transaction, proceeding, or piece of property)." Black's Law Dictionary (10th ed. 2014). Privity can be established in different ways, for example, by descent, devise, purchase or grant. "Generally, a grantee may not tack the adverse possession of the grantor over land not included in the conveyance of other land, to the grantee's own subsequent possession unless such omission was included in a correction deed or unless the claimant relies on an actual transfer rather than on the deed to establish privity." 2 C.J.S. *Adverse Possession* § 172 (2019). Tacking is "generally [not permitted] where the disputed land was not mentioned, included, or contemplated in a deed or conveyance . . . ." *Id.* "One who has acquired property by deed and seeks to tack the prior adverse possession of his or her grantor onto his or her own possession, to establish continuity of possession for purposes of adverse possession, ordinarily must show an express reference to or description of the disputed property in the grantor's deed. Possession generally cannot be tacked to make out title by adverse possession where the deed by which the last occupant claims title does not include the land in dispute." 3 Am. Jur. 2d *Adverse Possession* § 76 (2019); *see Sears*, 5 A.3d at 658, 663; *Messer v. Hibernia Sav. & Loan Soc.*, 84 P. 835, 837 (Cal. 1906) ("A claimant of land by adverse possession cannot tack to the time of his possession that of a previous holder, where the land is not included in the boundaries in the deed

from such holder."); *Senez v. Collins*, 957 A.2d 1057, 1075 (Md. 2008) ("[G]enerally the rule is that possession cannot be tacked to make out title by prescription where the deed by which the last occupant claims title does not include the land in dispute."); *Sheldon v. Michigan Cent. R. Co.*, 126 N.W. 1056, 1059 (Mich. 1910) ("The general rule is that possession cannot be tacked to make out title by prescription where the deed under which the last occupant claims title does not include the land in dispute."); *Ramsey v. Ramsey*, 49 S.E.2d 476, 477 (N.C. 1948) ("It is true there is evidence tending to show that [the defendant's] predecessor in title used [the disputed land] as he used it.  But [the defendant's] deed did not convey or purport to convey [the disputed land] or the triangular tract upon which [the disputed land] is located.  The description contained in defendant's deed does not embrace it. . . .  Therefore, he is not permitted to tack their possession, even if adverse within the meaning of the law, to his possession so as to show adverse possession for the requisite statutory period."); *Baylor v. Soska*, 658 A.2d 743, 746 (Pa. 1995) ("The only method by which an adverse possessor may convey the title asserted by adverse possession is to describe in the instrument of conveyance by means minimally acceptable for conveyancing of realty that which is intended to be conveyed.") (cited in *Sears*, 5 A.3d at 660); *Tissino v. Mavrakis*, 228 P.2d 106, 116 (Wyo. 1951) (quoting 2 C.J.S., *Adverse Possession*, § 131 d, which states "[a]s a general proposition, a claimant may not tack to his claim arising from his possession

of a disputed piece or strip of land the possession of his grantor where the disputed land was not mentioned, included, or contemplated in a deed or conveyance to him of other land.").

There can be exceptions to the general rule, however, as when the disputed parcel was inadvertently omitted from the deed and there is a subsequent deed correcting the oversight. 2 C.J.S. *Adverse Possession* § 172. Some cases allow tacking where the disputed parcel is "omitted from a deed description, especially contiguous property" and there is proof that the grantor "intended to and actually turned over possession." *Id.*[2] This appears to have been the situation in *Brumbaugh*

---

[2] The treatises cited in the majority's opinion, see *ante* at 8-10, also emphasize that tacking might be permitted in situations where the deed is silent with respect to the disputed parcel. *See* 16 Michael Allan Wolf, *Powell on Real Property* § 91.10[2] (2009) (referring to "conveying instrument [that] contains no legal description of the property" and property "omitted from a deed description," at 91-73; "adjacent land not covered by the deed," at 91-76; 3 Am. Jur. 2d *Adverse Possession* § 76 ("If, in connection with a conveyance of lands, there are circumstances showing an intent to transfer to the grantee the possession of other adjacent land occupied by the grantor, *but not covered by the deed*, there is privity, and the grantee is entitled to tack the period of the grantor's occupancy to the grantee's own in establishing title by adverse possession to the land not conveyed.") (emphasis added); 2 C.J.S. *Adverse Possession* § 172 (referring to tacking of adverse possession periods with respect to adjacent property "omitted from a deed description," the "undescribed part," and land that "adjoins land described in a deed, but is not described in the

*v. Gompers*, 269 F.472 (D.C. Cir. 1920), where the deed did not mention the disputed parcel. See *ante* at 6-7. I cautiously say "appears" because the *Brumbaugh* opinion does not explain its rationale for allowing tacking in that case. All the court says is that "a suggestion" was made that tacking should not be permitted and that it was rejected. We do not know what that suggestion was or why the court decided against it. We do not know whether the court was even focused on the contents of the deed with respect to the disputed parcel. What we do know, because we have obtained the record in that case — although the briefs could not be located — is that the deed did not convey or mention the disputed parcel as to which adverse possession claims were made.[3]

---

deed."). As discussed in the text, this is not a case where the deed is silent with respect to the disputed parcel as the driveway is expressly referred to in the deed, as a right of way.

[3] The 100-year-old *Brumbaugh* opinion was not presented to this court when it decided *Sears*, nor was it cited by the parties in this appeal until the court brought it to their attention and requested supplemental briefing. Counsel's failure to identify it as possibly relevant precedent in two appeals before this court is telling.

Faced with such a cryptic opinion, we can try to discern what the court had in mind from the cases it cites. They are not much help, however, to the majority's interpretation. Of the five cases cited in *Brumbaugh*, two relied on deeds that conveyed the disputed property, *Reid v. Anderson*, 13 App. D.C. 30, 34 (App. D.C. 1898),[4] and *Lea v. Polk County Copper Co.*, 62 U.S. 493 (1858).[5] Two cases cited in *Brumbaugh* allowed tacking where there was a deed that did not convey (or mention) the disputed parcel as to which adverse possession rights were claimed. *See St. Louis Sw. Ry. Co. v. Mulkey*, 139 S.W. 643, 644 (Ark. 1911), and *Viking Refrigerator & Mfg. Co. v. Crawford*, 114 P. 240, 241 (Kan. 1911). The fifth case

---

[4] The court in *Reid* rejected the claim of adverse possession because "there was no such open, actual, exclusive and continued possession of the premises by [the claimant] and those under whom he claims, for the full period of twenty years, as would make a good defensible title as against the party having a clear and paramount title by deed." *Id*. at 36.

[5] In *Lea* two persons claimed to own property pursuant to two different deeds which purported to convey the same property. The question for the court in *Lea* was whether one of the deeds, which was unregistered and held by a bona fide purchaser, qualified for confirmation under a Tennessee limitations act "intended to protect and confirm void deeds purporting to convey an estate in fee simple, where seven years' adverse possession had been held under them." 62 U.S. at 505. The court held that it did and dismissed the action for ejectment. There was no question that the two successive adverse possessors that made up the seven years had conveyed the property by deed between them. *See id*. at 498.

allowed tacking based on several transfers of actual possession, mostly between family members, where there was no writing at all documenting the transfers. *See Illinois Steel Co. v. Paczocha*, 119 N.W. 550, 552 (Wis. 1909).[6]

Notwithstanding *Brumbaugh*'s obscure text and the wide variety of circumstances involved in the authorities it cites, my colleagues assert that *Brumbaugh* adopted what they describe as the "majority rule" that generally allows tacking of inchoate adverse-possession rights whenever there is continuous adverse possession by two successive occupants of adjacent property and the first occupant sold the adjacent property to the second occupant. See *ante* at 8. That broad interpretation is unwarranted, however, as it reads into *Brumbaugh* a holding that goes well beyond the facts presented and authority cited in that case. The question is: what did *Brumbaugh* hold and does it govern this case? The answer is that *Brumbaugh*'s holding, to the extent we can divine it, does not govern this case because the facts are distinctly different.

---

[6] Because there was no writing or deed that set out the parties' understanding, the court allowed parol evidence about the circumstances of the successive transfers. *See* 119 N.W. at 553.

In *Brumbaugh*, tacking of the grantor's adverse-possession rights was allowed where the grantee of the property continued to use adversely an adjacent disputed parcel of land not mentioned in the deed. The *Brumbaugh* opinion did not say, one way or another, whether the same result would have obtained if the parcel had been referred to in the deed. It did not need to because it was not a fact in evidence. A court's opinion is to be understood in the context of its factual setting. *See District of Columbia v. Sierra Club*, 670 A.2d 354, 360 (D.C. 1996); *see also Levy v. District of Columbia Rental Hous. Comm'n*, 126 A.3d 684, 690 (D.C. 2015). Moreover, the scope of a court's holding is measured by whether a factor is an "integrated component" that is "essential to the outcome." *Parker v. K & L Gates, LLP*, 76 A.3d 859, 874 (D.C. 2013) (Ferren, S.J., concurring for the court).[7] Particular care should be taken not to overread a court's opinion as adopting an expansive holding. *See id.*

---

[7] As we explained in *Parker*,

> This court has "equated binding precedent under *M.A.P.* with the rule of *stare decisis*," which "is never properly invoked unless in the decision put forward as precedent the judicial mind has been applied to and passed upon the precise question." Accordingly, for purposes of binding precedent, a holding is a narrow concept, a statement of the outcome accompanied by one or more legal steps or conclusions along the way that — as this court and other have repeatedly held — are "necessary" to explain the outcome; other observations are dicta.

76 A.3d at 873 (quoting *United States v. Debruhl*, 38 A.3d 293, 298 (D.C. 2012).

at 876 ("The prior decision should not be construed more broadly by reference to nonessential, often ambiguous, sentences that can trigger hours of discussion as to whether the earlier decision was a binding holding or dictum."); *see also Albertie v. Louis & Alexander Corp.*, 646 A.2d 1001, 1005 (D.C. 1994). This caution is particularly prudent where (as in *Brumbaugh*) the court does not identify the precise issue it is deciding or explain its rationale. Applying these principles, *Brumbaugh* should be interpreted as holding that the fact there is no conveyance of the disputed parcel in the deed does not preclude tacking where there is continuous adverse possession and sale from the first adverse occupant to the second. It does not stand for the much broader proposition asserted by the majority that tacking is permissible so long as those conditions are met, regardless of what the deed says. And *Brumbaugh* most definitely does not address, much less decide, the consequence, for tacking, of the type of reference to the disputed parcel contained in the deed in this case.

That issue was addressed head on by this court in *Sears*, where notwithstanding transfer from seller to buyer of adjacent property and continuous possession of the disputed parcel — the conditions in *Brumbaugh* — tacking was precluded because the grantees could not establish the requisite privity with their grantors. *See Sears*, 5 A.3d at 663. Privity could not be shown because the deeds at

issue did not mention the disputed parcel as part of the conveyance and, "in addition," the grantors had alerted the grantees (one orally, and the other in a note to a plat attached to the deed) that the disputed parcel did not convey. *Id*. *Brumbaugh* was not an impediment to *Sears*'s holding because *Sears* addressed a different question, not presented or contemplated in *Brumbaugh*, where the grantees could not show by clear and convincing evidence that they had the requisite privity with the grantor with respect to the disputed parcel. This case, like *Sears*, is also one in which tacking is not permissible because the grantees cannot make the requisite showing of privity. Here, unlike in *Brumbaugh*, the deed between the parties is not silent with respect to the disputed driveway. To the contrary, the deed expressly mentions the driveway, excludes it from the conveyancing paragraph and specifically and accurately refers to it as a "right of way," further identifying it by reference to the liber and folio recordation of an easement granted over that parcel that has been recorded in the land records of the District of Columbia since 1949.[8] In this case,

---

[8] The 2008 deed to appellants:

Convey[s] . . . all that/those certain piece(s) or parcel(s) of land, together with the improvements, rights, privileges and appurtenances to the same belonging, situate in the District of Columbia, and *as described in Exhibit A attached hereto and made a part hereof*.

the deed is even clearer than in *Sears* that no transfer of adverse-possession rights to the driveway was intended and thus the required privity does not exist.

There is no need for a remand because there is no reason to think that there was any ambiguity or mistake[9] in the deed that warrants looking outside its four corners to ascertain the intent of the parties at the time of the conveyance. In addition to describing the property being conveyed by metes and bounds, lot and square number, the deed adds that it conveys "the same property as described in Deed from Margaret C. Newsom dated May 23, 1998." *Supra* note 8, at 31. There is no

---

Being all of the same property as described in Deed from Margaret C. Newsom dated May 23, 1998, recorded June 5, 1998 among the records of the Recorder of Deeds for the District of Columbia as Instrument No. 43251 . . . .

*Exhibit A*, entitled "Legal Description," refers to "Lot 50 in Square 3366 . . . recorded in Liber No. 75 at Folio 163 . . . *TOGETHER WITH a right of way more particularly described in Liber 8973 at [F]olio 581, of said land records*." (emphasis added).

The right of way described in Exhibit A is the driveway appellants now claim to own.

[9] The majority refers to a situation with "unjustified results," where the description of the property conveyed in the deed was "inadvertently erroneous." *Ante* at 15. But as mentioned, *supra* note 2, at 25, in such cases a corrected deed can be filed. In any event, there is no assertion that descriptions in the deed were erroneous. To the contrary, the references to the driveway were specific and accurately described it as a right of way.

contention made or evidence presented that in 1998 Ms. Newsom, the predecessor to appellants' grantor Ms. Harleston, had any inchoate adverse-possession rights to the driveway; appellants' disputed contention is that adverse possession began with Ms. Harleston's acquisition of the property and erection of a fence across the driveway sometime between 1998 (when she acquired the property from Margaret Newsome) and 2000. See *ante* at 3. Therefore, by its precise legal description of the property being conveyed, by additionally fixing the ownership rights being conveyed with reference to those existing in 1998, and by its express and accurate description of the grantor's interest in the driveway as a right of way, the deed in this case could not be more clear. Transfer of inchoate adverse-possession rights in the driveway was simply not contemplated by the parties as coming within the privity created by their sale transaction.

The rule the majority adopts is not only not mandated by *Brumbaugh*, but also contravenes fundamental principles of contract law we have long followed. Where parties enter into a transaction that is documented in a writing, it is that writing that contains the intent of the parties with respect to their agreement on the subject matter. Consistent with this principle, in determining whether there is the necessary privity to allow tacking of adverse-possession rights to an adjacent parcel, it is necessary to look at the deed in the first instance as *Sears* did. This is reasonable because any

adverse possessory rights to an adjacent parcel will have arisen in connection with use appurtenant to the titled property being conveyed in the deed and the parties can be expected to have been aware of both parcels, as was the case in *Sears*, and in this case. The deed (which appellants call "immaterial") is the best evidence of the parties' intentions in establishing their relationship.

In cases where, as here, there is a conveyance by deed and the deed refers to the disputed parcel, the deed is the touchstone with respect to that parcel and we should resist going beyond the deed to permit a broad-ranging review of extraneous evidence of the grantor's subjective intent as the majority proposes. The majority's approach is inconsistent with well-established law on the interpretation of deeds and the policy in favor of public recordation of land titles. "We interpret deeds as we do contracts, i.e., under the 'objective law of contracts.' This means that 'the written language embodying the terms of an agreement will govern the rights and liabilities of the parties [regardless] of the intent of the parties at the time they entered into the contract . . . .'" *Joyner v. Estate of Johnson*, 36 A.3d 851, 855 (D.C. 2012) (internal citations omitted and alteration in original). The majority gives license to set aside

a written recorded instrument that addresses the disputed parcel in favor of a search

for parol evidence, including evidence of previously unexpressed subjective intent.[10]

The majority's holding is deeply problematic from a policy perspective. The

doctrine of adverse possession — which recognizes ownership only under specific,

narrow conditions — is an exception to the general rule of property ownership

through acquisition of title by means of instruments (*e.g.*, deeds, wills) that are

readily verifiable and generally available in public records. The rules we adopt to

---

[10]    Even if we were to look beyond the deed to divine the grantor's intent, the affidavit of Ms. Harleston presented by appellants plainly states that she believed she had an "easement" in the driveway and that she intended to "convey ownership of the easement." Ms. Harleston, who is a lawyer, and who signed an affidavit to be presented in court, should be presumed to have used the legal term "easement" according to its plain and longstanding meaning. *See Easement*, Black's Law Dictionary (10th ed. 2014) ("an interest in land *owned by another* person, consisting in the right to use or control the land . . . for a specific or limited purpose. . . .") (emphasis added). The majority's strained reading of the affidavit, and its attempt to interpret surrounding circumstances to support an atextual interpretation, *ante* at 17-18, simply cannot be squared with what the affidavit actually says. The plain language of Ms. Harleston's affidavit does not say that she claimed ownership of the driveway or intended to convey inchoate adverse-possession rights to it. The affidavit plainly states the opposite, that she had an easement to use a driveway owned by someone else.

Evidence that Ms. Harleston erected a fence that, appellants claim, prevented appellee from using the driveway may support her adverse possession, but it is hardly evidence of her intent to transfer to appellants whatever inchoate rights her adverse possession might have created. See *ante* at 17. As discussed above, both the deed she executed at the time she sold her property to appellants and the affidavit she signed for them in this litigation say she was conveying a right of way in the driveway.

recognize transfer of right to ownership by adverse possession should be in harmony with and not undermine the important purposes underlying the requirement of recordation of deeds: notice, stability, clarity, and certainty. *See, e.g.*, *Smart v. Nevins*, 298 A.2d 217, 219 (D.C. 1972) ("It is fundamental that the purpose of recordation is to protect the rights of bona fide purchasers, creditors, assignees, and others relying upon the indicia of record ownership."); *Young v. Howard*, 120 F.2d 712, 713 (D.C. Cir. 1941) ("A primary purpose of the recordation of an instrument is to give notice of its existence to those about to deal with the property involved. Such persons are protected by, and charged with, notice of the recorded instrument."); *see also* D.C. Code § 47-1431 (a) (2015 Repl.) ("Within 30 days after the execution of a deed or other document by which legal title to real property . . . is transferred . . . all transferees . . . shall record a fully acknowledged copy of the deed or other document, including the lot and square number of the real property transferred or encumbered, with the Recorder of Deeds of the District of Columbia").[11]

---

[11] As the Supreme Court of Pennsylvania has persuasively observed, "the entire concept of 'circumstances' in the context of tacking is misplaced":

These important purposes were fully met in this case by a deed that clearly described the property transferred in detail, with a metes and bounds description, reference to square and lot number, and liber and folio recordation. That detailed description did not include the disputed driveway. The deed also expressly referred to the driveway as a right-of-way that has been recorded in the District of Columbia since 1949, with specific reference to its liber and folio numbers, without any indication that there was any change and that the grantor had a claim to ownership by adverse possession. The majority's holding undermines the purpose of recordation generally, and flies in the face of the documents actually recorded in this case by allowing consideration of the grantor's subjective and heretofore

---

Interested parties have a right to discern from the record of the state the title of any parcel of land. If tacking were to be permitted because of vague, undefined "circumstances," there could be and most likely would be no way for one not a party to the conveyance to know this. But the law mandates that a person asserting a claim of adverse possession make this assertion openly and notoriously to all the world. There must be no secret that the adverse possessor is asserting a claim to the land in question. If the adverse possessor's claim is to be passed onto a successor in title, therefore, there must be some objective indicia of record by which it can be discerned with some degree of certainty that a claim of title by adverse possession is being made and that the duration of this claim has been passed on to a successor in title.

*Baylor*, 658 A.2d at 745-46 (internal citation omitted).

unexpressed intent to convey adverse possession rights against the record owner of title. *Ante* at 19-20.

Finally, I would point out that even under the rule announced by the majority, two necessary elements are not met in appellants' case. The majority asserts that to show the privity required to permit tacking, a claimant must prove, by clear and convincing evidence, that (1) the claimant acquired an adjacent property, (2) the claimant's grantor and the claimant were in continuous adverse possession of the property at issue; (3) the deed between the claimant's grantor and the claimant did not expressly disavow transfer of an ownership interest in the property at issue; and (4) the claimant's grantor intended to surrender possession of the property at issue. *Ante* at 7-8, 19-20. The first element is met, but the second element is factually disputed. It is the third and fourth elements that cannot be met in this case as a matter of law.

The deed in this case expressly disavowed any inchoate adverse possessory interest in the driveway by specifically referring to a "right of way" in that parcel. As with "easement," the term "right of way" is well understood to mean a right to "pass through property *owned by another person*." *Right-of-Way*, Black's Law

Dictionary (10th ed. 2014) (emphasis added). This is the type of disavowal of an ownership interest, similar to one made in *Sears*,[12] that the majority recognizes as precluding tacking. *Ante* at 19-20. The deed also disavows transfer of any ownership interest in the driveway by stating that the property being conveyed is "all of the same property" that was transferred to the grantor in 1998, *before* any of the alleged adverse possessions began. See *supra* note 8, at 31. The deed therefore does not convey any rights that appellants' grantor might have acquired *after* 1998.[13] Thus, by its terms the deed did expressly disavow transfer of inchoate adverse-possession rights in the driveway. It is difficult to conceive — and the majority does not say — what more would be required to constitute an "express disavowal" of the transfer of adverse possession rights.

Nor does the evidence outside the deed suffice to remand in search for support that appellants' grantor, Ms. Harleston, intended to transfer adverse possession

---

[12] *Sears*, 5 A.3d at 655 ("As to lot 816, Ms. Downey warned Sears when he bought it in 1996, that 'we always enjoyed the use of this property, that we held it but we didn't have a deed to it, and that he could legally pursue this if he wanted to . . . . *I said that all of the land did not convey*. Whatever was on the deed was on the deed, but they had the full use of the yard and that we had always had it too.'") (emphasis in original).

[13] Appellants allege that their grantor erected a fence across the driveway sometime between the time when she purchased the property in 1998 and 2000. *Ante* at 3.

rights to the driveway. While summary judgment is inappropriate where there are genuine disputes of material fact, there is no genuine dispute here in light of the exacting burden — clear and convincing evidence — appellants must bear. The deed is the foremost expression of the intent of the parties to the transaction. Both in the deed contemporaneous with the sale of land in 2008 and even in Ms. Harleston's subsequent affidavit prepared for the purpose of this litigation in 2016, it is clear from the face of both documents that there was a disavowal of ownership of the driveway, which always and correctly described the grantor's rights in the driveway as a right of way and an easement. In the face of these two written documents, appellants cannot, as a matter of law, succeed in establishing with the requisite convincing clarity that the deed did not expressly disavow ownership in the driveway or that the grantor intended to convey inchoate adverse possessory rights to the driveway.[14] Thus, even applying the elements the majority would require to permit tacking, the record in this case does not warrant a remand.

---

[14] The sufficiency of evidence to meet the clear and convincing standard of proof in light of the unequivocal language of the deed and plain meaning of the affidavit is a question of law we decide de novo.

As tacking by appellants was not permissible, I dissent from the majority's decision to reverse and remand for further proceedings.  I would affirm the trial court's grant of summary judgment to appellee, the title owner of record.